IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sultan Saadiq Cahoon, : 
                    Appellant :
                          :
              v. : No. 281 C.D. 2015
                          : Submitted: January 22, 2016
Redevelopment Authority :
of the City of Philadelphia :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: April 12, 2016

         Sultan Saadiq Cahoon, *pro se*, appeals an order of the Court of Common Pleas of Philadelphia County (trial court) that dismissed his petition for distribution of just compensation for the taking of his real property by the Redevelopment Authority of the City of Philadelphia (Redevelopment Authority).[1] The trial court dismissed Cahoon's petition for the stated reason that it was barred by the law of the case doctrine. Agreeing with Cahoon that the trial court erred, we reverse and remand.

         On May 20, 2000, the Redevelopment Authority filed a declaration of taking of approximately 140 properties located in a blighted area in the City of Philadelphia. This case concerns three of those properties: 1226 Catherine Street, 1118 Webster Street and 725 South 13th Street. Wilford Sinclair Cahoon, Jr.

---

[1] Cahoon proceeds *in forma pauperis* and, thus, did not file a reproduced record.

owned the Catherine and Webster Street properties. The Redevelopment Authority's records showed that the owner of the 725 South 13th Street property was "Roth [sic] Chapman, TR for Sultah [sic] Saasiz [sic] Cahoon." Certified Record (C.R.) No. 3, Exhibit B. The Redevelopment Authority's offers of compensation were not accepted, and there is no record that the owners of the three properties filed objections to the declaration of taking. The Redevelopment Authority valued the Catherine Street property at $13,500; the Webster Street property at $15,000; and the 13th Street property at $8,500. The Redevelopment Authority placed funds equal to those valuations into an escrow account. In 2002, the Redevelopment Authority disbursed some of those funds to the City for pre-condemnation taxes owed on the three properties. This left $27,824.03 in the escrow account on the three properties.

On May 27, 2014, Cahoon, *pro se*, filed a petition to intervene and a petition to appoint a board of viewers.[2] However, shortly after the Redevelopment Authority filed an answer to his petitions, Cahoon withdrew them.

On August 6, 2014, Cahoon, *pro se*, filed a new petition requesting that a board of viewers be appointed to determine the compensation due to him for the condemnation of the three properties. The new petition alleged that Cahoon turned 18 years old in 2012 and first learned of the condemnation in 2013. He claimed compensation for the Catherine Street and Webster Street properties as the beneficiary of the estate of Wilford Sinclair Cahoon, Jr., his father. He also asserted that the 13th Street property had been held for him in trust by Ruth Chapman, his paternal grandmother.

---

[2] The trial court granted Cahoon permission to proceed *in forma pauperis*.

2

The petition alleged that Cahoon's father died in 1996. Ruth Chapman was granted letters of administration and was named executor of the estate, which included the 13th Street property. Chapman held that property in trust for Cahoon.[3] Acknowledging that the six-year statute of limitations for requesting the appointment of a board of viewers had run, Cahoon's petition asserted that the statute was tolled because he was a minor when the Redevelopment Authority did the taking.[4] Cahoon claimed that the values given the properties were offensively

---

[3] Cahoon was granted letters of administration for Wilford Sinclair Cahoon, Jr.'s estate on July 7, 2014. Second Petition, C.R. No. 266, Exhibit A.

[4] Section 5527 of the Judicial Code establishes:

    (a) Eminent domain.--

> (1) (i) If a condemnor has filed a declaration of taking, a petition for the appointment of viewers for the assessment of damages under 26 Pa. C.S. (relating to eminent domain) must be filed within six years from the date on which the condemnor first made payment in accordance with 26 Pa. C.S. §307(a) or (b) (relating to possession, right of entry and payment of compensation).

>   (ii) If payment is not required to be made under 26 Pa. C.S. §307(a) to obtain possession, a petition for the appointment of viewers must be filed within six years of the filing of the declaration of taking.

> (2) If the condemnor has not filed a declaration of taking, a petition for the appointment of viewers for the assessment of damages under 26 Pa. C.S. must be filed within six years from the date on which the asserted taking, injury or destruction of the property occurred or could reasonably have been discovered by the condemnee.

    (b) Other civil action or proceeding.--Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

42 Pa. C.S. §5527. Also relevant is Section 5533(b) of the Judicial Code, which states, in relevant part, as follows:

    Infancy.--

**(Footnote continued on the next page . . . )**

3

low, that the true market value of the three properties was $233,000 and that Cahoon was entitled to delay damages in the amount of $2,899,000.

The Redevelopment Authority responded that it complied with the notice requirements of the Eminent Domain Code when it filed its declaration of taking in 2000 and that the statute of limitations had run. The Redevelopment Authority also argued that Cahoon's infancy claim was unfounded because Ruth Chapman and Wilford Cahoon were the record owners. Further, the statute of limitations is tolled only where the minor seeks to commence a civil common law action; it does not toll the statute of limitations set forth in the Eminent Domain Code. Further, the petition did not plead facts to show that Cahoon inherited two of the properties. Finally, the Redevelopment Authority argued that in the event Cahoon was entitled to any compensation, it was limited to the approximately $27,800 remaining in escrow.

On September 26, 2014, the trial court, Judge Ellen Ceisler presiding, issued the following order:

> [U]pon consideration of [Cahoon's] Motion to Appoint a Board of Viewers filed on August 6, 2014, … and the responses thereto, it is hereby ORDERED and DECREED as follows:

---

**(continued . . . )**

(1) (i) If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

(ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa. C.S. §5533(b).

4

- [Cahoon's] Motion as it relates to 725 South 13th Street … is DISMISSED because [Cahoon] does not have standing to bring this Motion on behalf of Ruth Chapman; and

- [Cahoon's] Motion as it relates to the remaining properties is DISMISSED as untimely filed.

C.R. No. 273 (emphasis omitted). Cahoon did not appeal this order.

On November 26, 2014, Cahoon, now represented by counsel, filed a third petition. The petition requested "just compensation" for the taking of real property by eminent domain, *i.e.*, the $27,800 remaining in the escrow fund. The petition asserted that the five-year statute of limitations set forth in Section 522 of the Eminent Domain Code, 26 Pa. C.S. §522,[5] for a claim for distribution had been tolled because Cahoon did not reach the age of majority until 2012.

---

[5] Section 522 states as follows:

(a) Payment into court.--

(1) Upon refusal to accept payment of the damages or of the estimated just compensation under section 307 (relating to possession, right of entry and payment of compensation) or if the party entitled thereto cannot be found or if for any other reason the amount cannot be paid to the party entitled thereto, the court upon petition of the condemnor, which shall include a schedule of proposed distribution, may direct payment and costs into court or as the court may direct in full satisfaction.

(2) The condemnor shall give 20 days' notice of the presentation of the petition, including a copy of the schedule of the proposed distribution, to all parties in interest known to the condemnor in any manner as the court may direct by general rule or special order.

(3) If the court is satisfied in a particular case that the condemnor failed to use reasonable diligence in giving notice, the court may, upon petition of any party in interest adversely affected by the failure to give notice, order that compensation for delay in payment be awarded to the party for the period after deposit in

**(Footnote continued on the next page . . . )**

The Redevelopment Authority responded that Cahoon's most recent petition was barred by the law of the case doctrine. Thereafter, Cahoon requested, as alternative relief, that the escrow fund be remitted to the Commonwealth, pursuant to 26 Pa. C.S. §522(b). This would enable Cahoon to make a claim under Pennsylvania's Disposition of Abandoned and Unclaimed Property Act (Unclaimed Property Act), Act of April 9, 1929, P.L. 343, added by Section 5 of the Act of December 9, 1982, P.L. 1057, No 248, *as amended*, 72 P.S. §§1301.1–1301.29.

On January 16, 2015, the trial court, Judge Linda Carpenter presiding, dismissed Cahoon's third petition. Cahoon appealed, *pro se*, to this Court.[6] On appeal,[7] Cahoon contends: (1) that the evidence demonstrated an exception to the doctrine of coordinate jurisdiction; (2) the balance remaining in escrow should have been forwarded to the Commonwealth after five years; (3) that the statute of limitations was tolled; (4) that an undue and unjust burden has been imposed upon him; and (5) that in not transferring the escrow funds to the Commonwealth, the

---

**(continued . . . )**

> court by the condemnor under this section until the time the party
> in interest has received a distribution of funds under this section.

(b) Distribution.--The court upon petition of any party in interest shall distribute the funds paid under subsection (a) or any funds deposited in court under section 307 to the persons entitled thereto in accordance with the procedure in section 521 (relating to liens and distribution of damages), but, *if no petition is presented within a period of five years of the date of payment into court, the court shall order the fund or any balance remaining to be paid to the Commonwealth without escheat*. No fee shall be charged against these funds.

26 Pa. C.S. §522 (emphasis added).

[6] Cahoon's counsel withdrew his appearance.

[7] Our standard of review of a condemnation case is whether the trial court abused its discretion or committed an error of law. *In re Condemnation of Real Estate by Borough of Ashland*, 851 A.2d 992, 995 n.4 (Pa. Cmwlth. 2004).

Redevelopment Authority violated due process, abused its discretion or erred as a matter of law.[8]

On September 17, 2015, Judge Carpenter issued a Rule 1925(a) opinion. She explained that she dismissed Cahoon's third petition

> because of coordinate jurisdiction and law of the case principles. A coordinate judge had made a previous finding of a lack of standing in the exact properties at issue and had also determined that the matter was time barred. [Cahoon] failed to appeal these previous Orders and it would be improper for this Court to re-weigh issues of standing or statute of limitations.

PA. R.A.P. 1925(a) op. at 2.

The coordinate jurisdiction rule is encompassed within the doctrine of the "law of the case." *Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003). The principles of the law of the case doctrine have been explained as follows:

> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

---

[8] In his appeal to this Court, Cahoon also attempted to appeal a trial court order of January 28, 2015, approving a stipulation between the Redevelopment Authority and a third party condemnee regarding a property not at issue in his case. The Redevelopment Authority moved to quash the appeal. On June 8, 2015, this Court quashed Cahoon's appeal in part. Specifically, the Court quashed Cahoon's attempt to appeal a trial court order involving property not at issue in this case, but denied the Redevelopment Authority's motion to quash the appeal of the trial court's order of January 16, 2015, dismissing Cahoon's third petition. Because the trial court's Pennsylvania Rule of Appellate Procedure 1925(a) opinion only set forth the reasons for the issuance of the January 28th order, we remanded to the trial court to set forth its rationale for the January 16th order.

7

*Id.* at 29 n.6 (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995)). The coordinate jurisdiction rule "provides that judges of coordinate jurisdiction should not overrule each other's decisions." *Hunter v. City of Philadelphia*, 80 A.3d 533, 536 (Pa. Cmwlth. 2013). However, the rule is not absolute. *Id.*

Departure from the rule is permitted in "exceptional circumstances" such as when there has been a change in the law or in the facts. *Id.* Significantly, "the coordinate jurisdiction rule does not apply where the motions are of a different type." *Id.* "Where the motions differ in kind … a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Garzella v. Borough of Dunmore*, 62 A.3d 486, 497 (Pa. Cmwlth. 2013) (quoting *Riccio v. American Republic Insurance Co.*, 705 A.2d 422, 425 (Pa. 1997)).

Cahoon argues, first, that the coordinate jurisdiction rule is inapposite because his second and third petitions were not identical. The second petition sought the appointment of a board of viewers to establish just compensation for the taking of the properties, and the third petition seeks distribution of the compensation that the Redevelopment Authority had placed into escrow.

The Redevelopment Authority responds that the coordinate jurisdiction rule applied because Cahoon sought the same relief, raised identical facts and made the same legal arguments in all three petitions. It asserts that Cahoon simply re-filed his claims in the hopes that a different judge would reach a different decision.

We begin with a comparison of the second and third petitions. The second petition, 50 pages in length, requests the appointment of a "board of viewers to ascertain just compensation due to [Cahoon] for the condemnation and

8

taking of the [three] properties." Second Petition at 1, C.R. No. 266 (emphasis omitted). The second petition alleges that the declaration of taking had not been served on Cahoon or Chapman; that no written offer of just compensation had been made; and sought $233,000 for the actual value of the properties as well as $2,899,000 in delay damages. Finally, the second petition is based upon Section 502 of the Eminent Domain Code, which provides that a "condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers." 26 Pa. C.S. §502(a).[9]

The third petition is four pages in length and requests a "distribution of just compensation for the taking of real property by eminent domain." Third Petition at 1, C.R. No. 274 (emphasis omitted). The third petition seeks the $27,800 remaining in the escrow account and is based upon Section 522 of the Eminent Domain Code, which authorizes a court to distribute funds in escrow to "any party in interest." 26 Pa. C.S. §522(b). Section 522 further states that "if no petition is presented within a period of five years of the date of payment into court, the court shall order the fund or any balance remaining to be paid to the Commonwealth without escheat." *Id.*

The second and third petitions seek different relief and were based upon different statutory provisions. "[T]he coordinate jurisdiction rule does not apply where the motions are of a different type." *Hunter*, 80 A.3d at 536.

---

[9] Section 5527 of the Judicial Code permits a "petition for the appointment of viewers … within six years from the date on which the condemnor first made payment in accordance with 26 Pa. C.S. §307(a) or (b) (relating to possession, right of entry and payment of compensation)." 42 Pa. C.S. §5527(a)(1)(i).

Accordingly, the trial court erred in dismissing the third petition based on coordinate jurisdiction principles.

In his brief, Cahoon argues that if the statute had indeed run, then the trial court was obligated to remit the balance in the escrow fund to the Commonwealth without escheat. This would have permitted him to make a claim under the Unclaimed Property Act. In support, Cahoon cites to *In re Condemnation by Township of Manheim*, 868 A.2d 38 (Pa. Cmwlth. 2005).

In that case, the condemnees did not file objections to the township's declaration of taking, but rejected its offer of just compensation. On August 13, 1998, the township deposited the estimated just compensation with the trial court. On November 19, 2003, the condemnees petitioned for payment of the estimated just compensation deposited with the trial court. The condemnees argued that the six-year statute of limitations in Section 5527 of the Judicial Code was applicable. However, the trial court agreed with the township that because more than five years had elapsed, the balance in the escrow fund had to be paid to the Commonwealth. This Court affirmed, holding that Section 522 "mandated" that the trial court remit any undistributed just compensation funds to the Commonwealth after five years. *Township of Manheim*, 868 A.2d at 41 (emphasis omitted).

We agree with Cahoon that *Township of Manheim* is dispositive. Should a finding be made that the statute of limitations has run, then the trial court must transfer the funds in escrow to the Commonwealth without escheat.

For these reasons, we reverse the trial court's order dismissing Cahoon's third petition and remand the matter for consideration on the merits. Should the trial court determine that the statute of limitations has run, it must

10

distribute the funds to the Commonwealth without escheat, as set forth in Section 522(b) of the Eminent Domain Code, 26 Pa. C.S. §522(b).[10]

_____
MARY HANNAH LEAVITT, President Judge

---

[10] Because we remand this case, we do not address the other issues raised by Cahoon.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sultan Saadiq Cahoon,         :
           Appellant      :
                      :

       v.              :  No. 281 C.D. 2015
                      :

Redevelopment Authority     :
of the City of Philadelphia    :

## **O R D E R**

AND NOW, this 12th day of April, 2016, the order of the Court of Common Pleas of Philadelphia County, dated January 16, 2015, is REVERSED and the case is REMANDED in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge